UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL LEE, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GOLF TRANSPORTATION, INC., et al.,<br><br>  Defendants. | CIVIL ACTION NO. 3:21-CV-01948<br><br>(MEHALCHICK, M.J.) |

## MEMORANDUM

Before the Court is a motion to quash the subpoena duces tecum of Defendant Coyote Logistics, LLC, filed by Plaintiffs Michael Lee and Anderson Bastone (collectively, "Plaintiffs"). (Doc. 106). This is a wrongful death, survival action initiated by Plaintiff Lee, as the Administrator of the Estate of Raven E. Lee (the "decedent"), with the filing of a complaint on November 16, 2021, as a result of a fatal motor vehicle accident that occurred on October 7, 2021. (Doc. 1). In the complaint, Lee names as Defendants Golf Transportation, Inc., O'Connor Trucking, Inc., JP Logistics, Inc., United Natural Foods, Inc. and UNFI Transport, LLC. (collectively, "Defendants"). (Doc. 1). On April 28, 2022, Lee filed an amended complaint, adding Defendant Coyote Logistics, LLC.[1] (Doc. 29). On June 3, 2022, Anderson Bastone also filed a complaint as a result of the fatal motor vehicle accident

---

[1] On November 29, 2022, Plaintiffs filed a motion to compel the depositions of Coyote Logistics' representatives and employees. (Doc. 74). Plaintiffs assert that Coyote Logistics have refused to produce its representatives and employees for depositions, effectively thwarting Plaintiffs' attempts to engage in meaningful discovery. (Doc. 74, at 3-4). There has been no further briefing on this issue or discussion with the Court as to the status of the depositions of Coyote Logistics' representatives and employees. Therefore, Plaintiffs are directed to notify the Court on or before **Friday, May 12, 2023**, as to whether this issue has been resolved or the Court's intervention is still requested.

that occurred on October 7, 2021, which was consolidated into the instant case on October 4, 2022. (Doc. 42; Doc. 55).[2]

For the following reasons, the motion to quash shall be DENIED.

I. **STANDARD OF REVIEW**

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. *See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.,* 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing *Scott Paper Co. v. United States*, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." *Kresefky v. Panasonic Commc'ns and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *see also Hasbrouck v. BankAmerica Hous. Servs.*, 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); *EEOC v. Mr. Gold, Inc.*, 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

---

[2] On May 8, 2023, counsel for Plaintiffs filed a letter (Doc. 111) requesting a teleconference regarding what he believed to the production of documents in response to the subpoena at issue in this matter. On that same day, counsel for Defendant Coyote Logistics responded to the letter (Doc. 112), clarifying that the documents referenced by Plaintiff were part of the autopsy report previously produced during discovery. A review of these documents confirms the same. As such, there is no need for a teleconference on this matter.

*Halsey v. Pfeiffer*, No. 09-CV-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

> Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

II. **DISCUSSION**

On April 4, 2023, Plaintiffs were served with a subpoena duces tecum directed to Northern Tier Research of Dunmore, Pennsylvania. (Doc. 106-1, at 2-3). The subpoena seeks information from Northern Tier regarding its testing of the decedent, Raven Lee's, blood post-crash. (Doc. 106-1, at 1). Specifically, the addendum to the subpoena commands Northern Tier to produce the following document on or before April 20, 2023:

1. Any and all relevant state and federal laboratory accreditations and certifications, including but not limited to Accreditation Certification/Compliance/Proficiency by the College of American Pathologists and/or Toxicologists – ISO 15189; American National Accreditation Board, ANSI Standard ISO/IEC 17025; and Proficiency Testing documentation.

2. Any and all chain-of-custody documentation complete with date and time, storage and handling of Raven Lee's actual blood specimen that was tested at Northern Tier.

> Any and all step-by-step protocols, assay conditions, standard curve calibration data and/or analyte target range calibration; calibration verification of assay linearity, calibration curves for standard reagents and internal standard including blanks, internal control(s), percent variance, and percent confidence intervals; Limit of Detection (LOD) and Limit of Quantitation (LOQ) values for drugs and analytes detected; all reagents and standards used with lot number, purchase and expiration dates, concentrations, and source of purchase; make, model, serial number, purchase date, service and calibration dates of the instrumentation used, and all instrumentation validation documentation.

3. Any and all signed and dated laboratory reports or worksheets, if they exist, with printed names, signatures and degrees/certifications of the technician(s) who performed the above analysis and of the supervisor(s) who reviewed the results of the above analysis.

(Doc. 106-1, at 2).

Federal Rule of Civil Procedure 45 "establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit." *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013). "A subpoena under Rule 45 'must fall within the scope of proper discovery under [Federal Rule of Civil Procedure] 26(b)(1).' " *First Sealord Sur.*, 918 F. Supp. 2d at 382 (quoting *OMS Invs., Inc. v. Lebanon Seaboard Corp.*, No. 08–2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)). Under Rule 45, it is within the sound discretion of district courts to "ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands." *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, No. 3:16-CV-2470, 2017 WL 2212505, at *1 (M.D. Pa. May 17, 2017).

4

Federal Rule of Civil Procedure 45(d)(3)(A) requires a court, upon motion, to quash or modify a subpoena that, among other things, "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A). The party moving to quash such a subpoena "bears a 'heavy burden' of demonstrating that an enumerated basis for quashing the subpoena exists." *Malibu Media, LLC v. Doe*, No. 4:15-CV-2281, 2016 WL 524248, at *2 (M.D. Pa. Feb. 10, 2016).

"'Generally speaking, a party does not have standing to quash a subpoena served on a third party.'" *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434 (E.D. Pa. 2001); *see also Davis v. Gen. Accident Ins. Co. of Am.*, No. 98–4736, 1999 WL 228944, at *2 (E.D. Pa. Apr. 15, 1999) ("Ordinarily, only the non-parties whom were served with the subpoenas may move to have them quashed under Federal Rule of Civil Procedure 45([d])(3)(A)."). An exception to this rule exists, however, where "the party seeks to quash based on claims of privilege relating to the documents being sought." *Thomas*, 202 F.R.D. at 434; *First Sealord*, 918 F. Supp. 2d at 382 ("An exception to this rule permits a party to move to quash when it 'claims some personal right or privilege in respect to the subject matter of a subpoena . . . directed to a nonparty.'" (quoting *Davis*, 1999 WL 228944, at *2)).

A Rule 45 subpoena served in conjunction with discovery must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1). *See, e.g., Roesburg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980) ("[t]o voice a successful objection to an interrogatory, [a party] cannot simply intone this familiar litany. Rather, [a party] must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive"); *see also Rivera v. DHL Global Forwarding*, 272 F.R.D. 50, 55 (D.P.R. 2011)

5

(noting that a party must "specifically detail the reasons why" a request is irrelevant). Parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense—including . . . the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Information sought by the parties need not be admissible at trial if it is "reasonably calculated" to lead to discoverable information. Fed. R. Civ. P. 26(b)(1). The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Twp. of Lower Merion,* No. 96-CV-372, 1996 WL 653114, at *1 (E.D. Pa. Nov. 1, 1996).

   Here, as a party to this action, Plaintiffs ordinarily do not have standing to quash the third-party subpoena directed to Northern Tier, unless they are able to demonstrate some personal interest in, or privilege with respect to, the subpoena's subject matter – information regarding Northern Tier's testing of Raven Lee's blood after the October 7, 2021, motor vehicle crash. (Doc. 106, at 1-2). The Court finds Plaintiffs have personal interest in the subpoena's subject matter as it relates to the bloodwork of Raven Lee, the decedent in the underlying motor vehicle accident.

   Plaintiffs assert that the subpoena *duces tecum* must be quashed as: (1) defective on its face for failure to comply with Federal Rule of Civil Procedure 45(a)(1)(A)(iii); (2) unduly prejudicial; and (3) irrelevant. (Doc. 106). The Court will address each argument in turn.

   First, Plaintiffs maintain that the subject subpoena is inconsistent with the addendum to the subpoena regarding the time specified for production. (Doc. 106, ¶ 16). In relevant part, the subject subpoena states that the requested information is to be produced by April 20, 2023,

6

while the addendum to the subpoena states the information is to be produced "within 30 days," which would make the document production due on or before May 6, 2023. (Doc. 106-1, at 1-2). In opposition, Coyote Logistics assert that the inconsistencies do not invalidate the subpoena or otherwise prevent the deponent, Northern Tier, from seeking clarification on the issue. (Doc. 110, ¶ 16). The Court finds that the inconsistencies described above do not render the subpoena defective on its face. However, Coyote Logistics are directed to serve a revised subpoena *duces tecum* clarifying the issue of when the requested information shall be produced.

Second, Plaintiffs contend "the timing of the subpoena, which seeks the production of discovery by a non-party on either April 20, 2023 or May 5, 2023, AFTER the discovery deadline of April 6, 2023, is violative of this Court's March 9, 2023 Order and unduly prejudicial on Plaintiffs." (Doc. 106, ¶ 19). Plaintiffs suggest that service of the subpoena is contrary to Coyote Logistics' statements to the Court regarding the need for additional time for discovery and violates "the spirit of the Court's fourth discovery end date." (Doc. 106, ¶¶ 20-21). In opposition, Coyote Logistics assert that the subpoena is not untimely because it was issued before the discovery deadline. (Doc. 110, ¶ 19). Noting that subpoenas to third parties are not automatically subject to discovery deadlines established by the court for the conduct of discovery between parties to a case, the Court finds that the subpoena is not defective on its face as untimely. *See City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953CIV, 2008 WL 1995298, at *4 n.7 (E.D. Pa. May 5, 2008) (citing *O'Boyle v. Jensen,* 150 F.R.D. 519, 520 (M.D.Pa.1993) ("The subpoenas at issue are addressed to third parties, not to the plaintiff. The discovery deadline established by the court precludes parties from

conducting any further discovery addressed to each other or requiring one another's presence or participation, e.g. discovery in the form of interrogatories or depositions. It was not intended to preclude, and does not preclude, parties from gathering additional information on their own case or that of their opponent through independent lines of inquiry not directed to, or requiring the participation of, the other side.")).

Third, Plaintiffs argue that the subpoena is unduly prejudicial. (Doc. 106, ¶¶ 19-21). Plaintiffs maintain that Coyote Logistics has had ample opportunity to obtain the information by discovery in the action and that the proposed subpoena will lead to further discovery after the prior deadline of April 6, 2023. (Doc. 106, ¶¶ 20, 22). In response, Coyote Logistics argue that the subpoena is not unduly prejudicial to Plaintiffs because "additional information came to light" during witness depositions that took place after the March 9, 2023, which prompted the subpoena, and "[t]he subpoena was issued in good faith before the discovery deadline and any documents received will be promptly produced to plaintiffs' counsel upon receipt." (Doc. 110, ¶¶ 20-21). Coyote Logistics also maintain that "[w]hile it is admitted that a timely response to the subpoena will yield documents after the discovery deadline, it will be more than 90 days before the August 28, 2023 trial date." (Doc. 110, ¶ 22). Coyote Logistics assert that Plaintiffs are not prejudiced because they were never precluded from requesting additional time to produce supplemental expert reports or rebuttal expert reports pursuant to Rule 26(a)(3)(D)(ii). (Doc. 110, ¶ 23).

The Court finds that Plaintiffs' arguments are unpersuasive. Plaintiffs' argument that the subpoena will only lead to additional discovery is merely speculative at this time. Further, the Court is persuaded by Coyote Logistics' argument that the subpoena is not facially

prejudicial to Plaintiffs so long as copies of all responsive documents are promptly provided to Plaintiffs, and because Plaintiffs' experts will have the opportunity to consider any subsequently produced documents received from the subpoena and provide a supplemental expert report pursuant to Rule 26(a)(3)(D)(ii). Thus, the Court finds Plaintiffs' are not unduly prejudiced by the subpoena *duces tecum*.

Fourth, Plaintiffs argue that "[t]he clear and obvious purpose of this subpoena is to attempt to inappropriately introduce the highly prejudicial, but irrelevant, issue of marijuana use by Ms. Lee into this wrongful death action in a desperate attempt to denigrate her character and to insinuate comparative fault. . . ." (Doc. 106, ¶ 27). In opposition, Coyote Logistics argues that the discovery is relevant because Plaintiffs' expert "opened the door on whether Raven Lee was under the influence" of marijuana. (Doc. 110, ¶ 24). Coyote Logistics explain that "recent testimony, combined with the autopsy report and plaintiffs' expert's claim that the toxicology was negative, prompted the inquiry to Northern Tier Research for additional information." (Doc. 110, ¶ 26). The Court finds that Plaintiffs have failed to establish that the requested information is not relevant to Coyote Logistics' defense in this action. *See* Fed. R. Civ. P. 26(b)(1). As explained above, information sought by the parties need not be admissible at trial if it is "reasonably calculated" to lead to discoverable information. Fed. R. Civ. P. 26(b)(1).

Accordingly, the Court will deny Plaintiffs' motion to quash.

III. **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to quash the subpoena *duces tecum* is **DENIED**. (Doc. 106). An appropriate Order follows.

Date: **May 9, 2023**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**