# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL LEE, as the Administrator of the Estate of RAVEN E. LEE | CIVIL ACTION NO: 3:21-CV-01948-KM |
| Plaintiff, | |
| vs. | |
| | JURY TRIAL DEMANDED |
| GOLF TRANSPORTATION, INC., OCONNOR TRUCKING, INC., JP LOGISTICS, INC., and COYOTE LOGISTICS, LLC | |
| Defendants. | |

---

| | |
|---|---|
| ANDERSON BASTONE, as the Administrator of the Estate of CHAZ BASTONE, | CIVIL ACTION NO: 3:21-CV-01948-KM |
| Plaintiff, | |
| vs. | |
| | JURY TRIAL DEMANDED |
| GOLF TRANSPORTATION, INC., OCONNOR TRUCKING, INC., JP LOGISTICS, INC. and, COYOTE LOGISTICS, LLC | |
| Defendants. | |

## COYOTE LOGISTICS, LLC'S OPPOSITION TO GOLF TRANSPORTATION INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

AND NOW, this 12TH day of October, 2023, comes defendant, Coyote Logistics, LLC, by and through its counsel, Rawle & Henderson LLP, and hereby

1

submits this Opposition to Defendant Golf Transportation, Inc.'s Motion for Judgment on the Pleadings as follows:

I.   **FACTUAL & PROCEDURAL BACKGROUND**

This action arises from two consolidated wrongful death cases in which Plaintiffs allege that on October 7, 2020, plaintiff's decedents, Raven E. Lee and Chaz Bastone, died in a motor vehicle accident involving a tractor-trailer driven by Greg Leksowski.  *See* Lee ECF Doc. 29.

Of relevance, it is alleged that on the date of the accident, Coyote Logistics, LLC [hereinafter "Coyote"], a licensed property broker, provided property broker services to UNFI for the brokering of the subject load hauled.  *See* Lee ECF Doc. 36.  Coyote brokered the subject load to defendant, Golf Transportation, Inc. [hereinafter "Golf"], a motor carrier, with instructions not to double broker the subject load.  *See* Lee ECF Doc. 36.  Unbeknownst to Coyote, Golf subsequently double brokered the subject load to OConnor Trucking, Inc. [hereinafter "OConnor"], a second motor carrier.  On the date of the accident, the load was hauled by Mr. Leksowski, an independent contractor of OConnor Trucking, and the driver of the OConnor tractor-trailer carrying the load at the time of the subject accident.

On May 31, 2022, Coyote answered plaintiff, Michael Lee's Amended Complaint, and on October 10, 2022, Coyote answered plaintiff, Anderson Bastone's Complaint.  *See* Lee ECF Doc. 36; Bastone ECF Doc. 58.  In its Answers,

2

Coyote raised affirmative defenses and cross-claims including assertions of contractual indemnity and breach of contract against Golf arising from the parties' Carrier Agreement. *See* Lee ECF Doc. 36, Bastone ECF Doc. 58.

In relevant part, the Carrier Agreement between Golf, as Carrier, and Coyote, as Broker, included the following provisions:

> 1.  **SCOPE OF WORK**. BROKER agrees to cause freight to be tendered to CARRIER, and CARRIER agrees to pick up, transport, and deliver such freight and provide all such services as BROKER shall request on all freight tendered by BROKER as set forth in a Load Confirmation Sheet ("the Services"). CARRIER warrants and agrees that all freight tendered to it by BROKER pursuant to this Agreement shall only be transported by CARRIER on, in or with equipment owned by CARRIER or leased to CARRIER under a lease having a duration of more than thirty (30) days and operating under CARRIER's operating authorities. CARRIER shall not, in any manner, subcontract, broker, or tender to any third party for transportation any freight tendered to CARRIER by BROKER for transportation pursuant to this Agreement, except to the extent CARRIER uses the services of an owner/operator and provided that the owner/operator is providing such transportation services and operating equipment duly authorized under CARRIER's operating authority.
>
> \*             \*             \*
>
> **INDEMNITY**. To the fullest extent permitted by law, CARRIER shall defend, indemnify, and hold harmless BROKER and its affiliates, together with BROKER's Customers, agents, insurers and reinsurers, successors, and assigns, and each of them, jointly and severally, from and against any and all claims, liabilities, damages, demands, expenses, including without limitation reasonable attorney fees or other professional fees, actions, and causes of action, suits at law and proceedings in equity, arising out of or in connection with (i) the operations and activities of CARRIER hereunder, as a motor carrier or otherwise, (ii) CARRIER's performance of Services pursuant to this

Agreement; (iii) any breach of CARRIER's obligations under this Agreement; (iv) violation by CARRIER, of any federal, state, provincial, territorial, or local law, rule or regulation; and (v) claims, demands, and suits by other carriers or intermediaries against BROKER or its Customers seeking payment for transportation charges on shipments tendered to CARRIER.

> A. CARRIER'S indemnification obligations set forth above shall not apply to the extent the claim, demand, liability or expense is caused by the negligence of BROKER or its Customers.

\*      \*      \*

**MISCELLANEOUS**.

\*      \*      \*

> H. <u>Severance/Survival</u>. In the event any of the terms of this Agreement are determined to be invalid or unenforceable, no other terms shall be affected, and the unaffected terms shall remain valid and enforceable as written. The representations, rights, and obligations of the Parties hereunder shall survive termination of the Agreement for any reason.

\*      \*      \*

> M. <u>Governing Law-Venue</u>. Any legal action arising under or pursuant to this Agreement shall be brought and maintained solely in the State or Federal courts located in Cook County, Illinois or Fulton County, Georgia and shall be governed by and construed in accordance with the laws of the State of Illinois without regard to choice of law provisions.

*See* Lee ECF Doc. 36, Bastone ECF Doc. 58 at "Exhibit A."

On March 9, 2023, this Honorable Court issued a Case Management Order directing all dispositive motions to be submitted to the Court on or before June 2,

2023. *See* ECF Doc. 100. Almost four months late, on September 28, 2023, Golf filed the instant Motion for Judgment on the Pleadings. The trial is scheduled to begin on December 11, 2023. *See* ECF Doc. 164.

## II. COUNTER STATEMENT OF QUESTIONS INVOLVED

**A. SHOULD GOLF'S MOTION FOR JUDGMENT ON THE PLEADINGS BE DENIED BECAUSE IT IS UNTIMELY?**

**[Suggested answer in the affirmative]**

**B. IN THE ALTERNATIVE, SHOULD GOLF'S MOTION FOR JUDGMENT ON THE PLEADINGS BE DENIED BECAUSE THE INDEMNIFICATION CLAUSE IN THE CARRIER AGREEMENT IS VALID AND ENFORCEABLE UNDER ILLINOIS LAW?**

**[Suggested answer in the affirmative]**

## III. ARGUMENT

**A. DEFENDANT GOLF TRANSPORTATION'S MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE DENIED BECAUSE IT IS UNTIMELY.**

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for a motion for judgment on the pleadings permits the court to consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if

the complainant's claims are based upon these documents." *Wolfington v. Reconstruction Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). Entry of "[j]udgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).

Generally, "district courts are afforded great deference with regard to matters of case management." *Drippe v. Tobelinski*, 604 F.3d 778, 783 (3d Cir. 2010). In the present matter, this Honorable Court issued a Case Management Order on March 9, 2023, directing all dispositive motions to be filed on or before June 2, 2023. *See* ECF Doc. 100.

Federal Rule of Civil Procedure 6(b) governs court deadlines and extensions of time. Under Rule 6(b)(1)(B), once a motion filing deadline has passed, "a party must make a formal motion for extension of time and the district court must make a finding of excusable neglect . . . before permitting an untimely motion." *Drippe*, *supra* at 785.

The trial in this matter is scheduled to begin on December 11, 2023. *See* ECF Doc. 164. However, Golf filed its Motion for Judgment on the Pleadings on September 28, 2023, almost four months after the Court-ordered deadline of June 2, 2023. The deadline for filing dispositive motions has, therefore, long passed. Despite this, Golf failed to file a formal motion requesting an extension of time to

file its Motion for Judgment on the Pleadings. *See id.* The Third Circuit explained that pursuant to Rule 6(b) "any post deadline extension must be 'upon motion made,' and is permissible only where the failure to meet the deadline 'was the result of excusable neglect.'" *Drippe, supra* at 783 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896, 110 S. Ct. 3177, 3192, 111 L. Ed. 2d 695, 721(1990) (quoting Rule 6(b))). In addition, Golf failed to demonstrate excusable neglect. *See Drippe, supra at 785 citing Pioneer Inv. Serv. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)) (explaining excusable neglect considers factors including "the danger of prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith"). Since Golf failed to comply with Rule 6(b), Golf's Motion for Judgment on the Pleadings should be denied as untimely.

> **B. IN THE ALTERNATIVE, GOLF'S MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE DENIED BECAUSE THE INDEMNIFICATION CLAUSE IN THE CARRIER AGREEMENT IS VALID AND ENFORCEABLE UNDER ILLINOIS LAW.**

Under Illinois's motor carrier anti-indemnity statute:

(a) Notwithstanding any other provision of law, a provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract that purports to indemnify, defend or hold harmless, or has the effect of indemnifying, defending, or holding harmless, the promisee from or against any

7

> liability for loss or damage resulting from the negligence or intentional acts or omissions of the promisee is against the public policy of this State and is void and unenforceable.

625 Ill. Comp. Stat. 5 § 18c-4105(a). The statute applies to any motor carrier transportation contract involving moving, loading, unloading, and storing property contents. *See* § 18c-4105(b)(1).

1. **The indemnification provision in the Carrier Agreement is valid and enforceable as it specifically bars indemnification for Coyote's own negligence.**

Under Illinois' motor carrier anti-indemnity statute, a motor carrier contract cannot impose indemnity for a promisee's own negligence. Specifically, the Illinois statute states that a contract purporting to indemnify a promisee from the "negligence or intentional acts or omissions of the promisee" is void and unenforceable. *See* § 18c-4105(a). Thus, in the present matter, the application of the Illinois statute is limited to barring indemnification for Coyote's own negligence. It does not extend to barring Golf's negligence.

This interpretation is supported by Illinois case law. For example, in *Coyote v. Bajan*, the Court explained that "Illinois law does not prohibit indemnification provisions generally." *Coyote Logistics, LLC v. Bajan Enterprises*, 606 F. Supp.3d 804, 807 (N.D. Ill. June 8, 2022). Rather, it only prohibits indemnification "when the first party wants to saddle the second party with the costs of the first party's own

8

negligence and intentional misconduct." *Id.* The Court further explained that "[i]f a party has a right to indemnification for some other reason, that contractual arrangement is fair game." *Id.*

This principle was also applied in *Burke v. John Maneely Co.* In *Burke*, an injured plaintiff brought claims against a manufacturer for claims of negligence. The manufacturer filed a third-party complaint against the plaintiff's employer alleging contribution, contractual indemnity, and breach of contract. *See Burke v. John Maneely Co.*, 2016 U.S. Dist. LEXIS 14053, at *3-4 (N.D. Ill. 2016). The relevant indemnification clause stated that the plaintiff's employer was to indemnify the manufacturer "for any losses, expenses, damages or claims asserted in connection with the carriage of goods under the [Contract]." *See id.* at *4 (internal citations and quotations omitted). As such, the manufacturer's indemnification provision sought indemnification for the entire loss, regardless of its own negligence. *See id.* The Court held that as the indemnification clause intended to indemnify the plaintiff's employer for the manufacturer's own negligence, it violated Illinois' anti-indemnity statute and was void and unenforceable. *See id.* at *18.

However, this case is not like *Burke*, where the indemnification clause sought to indemnify the plaintiff's employer for the manufacturer's own negligence. Rather, the indemnification clause in the subject Carrier Agreement is highly specific in its intent **not** to indemnify Coyote for Coyote's own negligence.

9

The provision expressly states "CARRIER'S indemnification obligations set forth above shall not apply to the extent the claim, demand, liability or expense is caused by the negligence of BROKER or its Customers." *See* Lee ECF Doc. 36, Bastone ECF Doc. 58 at "Exhibit A" at ¶12(A). Therefore, the indemnification provision does not seek to indemnify Coyote for its own negligence. Therefore, the indemnification provision does not violate Illinois' motor carrier anti-indemnity statute and the indemnification provision requiring Golf to indemnify Coyote for Golf's negligence is valid and enforceable.

In the present matter, and over Coyote's objection, plaintiffs seek to apply joint and several liability under *Spencer* in the aims of holding Coyote liable for Golf's negligence. *See Spencer v. Johnson*, 249 A.3d 529, 529 (Pa. Super. 2021). As such, should the jury find that Coyote is negligent, the anti-indemnification statute and the specific, limiting terms of the Carrier Agreement, assures to hold Coyote responsible only for its own percentage of negligence and not the percentage of negligence attributed to Golf or OConnor. Therefore, under Illinois law, Coyote should still be afforded indemnification for the percentage of liability attributed to Golf and OConnor.

## 2. Any portion of the Carrier Agreement deemed to violate Illinois' anti-indemnity statute can be severed and the remainder of the Carrier Agreement is valid.

To the extent that this Honorable Court finds any portion of the indemnification provision unenforceable, that portion can be severed. The Carrier Agreement "includes a severability provision, and it confirms that unenforceable text can be thrown overboard without sinking the rest of the terms." *Bajan, supra* at 810. The Carrier Agreement specifically states "[i]n the event any of the terms of this Agreement are determined to be invalid or unenforceable, no other terms shall be affected, and the unaffected terms shall remain valid and enforceable as written." *See* Lee ECF Doc. 36, Bastone ECF Doc. 58 at "Exhibit A."

In this case, Golf acknowledges that "the indemnification provision expressly exempts Coyote's own negligence from triggering the Indemnification Provision." *See* ECF Doc.170 at page 9 of 12. Since Coyote is only seeking indemnification for Golf's negligence and is NOT seeking indemnification for its own negligence, the indemnification provision is valid and enforceable, even under Illinois' anti-indemnification statute. Thus, Golf's Motion for Judgment on the Pleadings to strike Coyote's claims for contractual indemnification and breach of contract should be denied.

17323095-1

### 3. Pennsylvania's Perry-Ruzzi Doctrine is Inapplicable.

As acknowledged in Golf's Motion, the terms of the contract state that Illinois law applies in a dispute pertaining to the terms of the Carrier Agreement. Nonetheless, Golf also attempts to strike the claims for contractual indemnification and breach of contract under Pennsylvania's *Perry-Ruzzi* Rule. The *Perry-Ruzzi* Rule is inapplicable, not only because Pennsylvania law does not apply, but also because Coyote does not seek indemnification for its own negligence.

Under the *Perry-Ruzzi* rule, indemnification agreements "that seek to indemnify against personal injuries should not be constructed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms". *See Perry v. Payne*, 217 Pa. 252, 262 (1907); *see also Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 7, 588 A.2d 1, 4, (1991) (holding that a "contract of indemnity against personal injuries should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms."). The *Perry-Ruzzi* Rule applies only if (1) Pennsylvania law applies; and (2) Coyote was seeking indemnification for its own negligence. Since Illinois law applies and since Coyote is not seeking indemnification for its own negligence, the *Perry-Ruzzi* Rule is inapplicable.

As described above, the Carrier Agreement specifically excludes Coyote's own negligence from the indemnity provision. The Pennsylvania Supreme Court

has repeatedly held that the "*Perry-Ruzzi* rule should be limited to those situations where an indemnitee is attempting to recover for its own negligence." *Mace v. Atl. Ref. & Mktg. Corp.*, 567 Pa. 71, 79, 785 A.2d 491, 496 (2001) (refusing to expand *Perry-Ruzzi* when there is only an allegation of negligence by the indemnitee); *Topp Copy Prods. v. Singletary*, 533 Pa. 468, 474, 626 A.2d 98, 101(1993) (refusing to apply *Perry-Ruzzi* rule in consideration of the validity and enforceability of an exculpatory clause in a lease). In this case, Coyote is only seeking indemnity for Golf's negligence and, as evidenced by the clear and unequivocal language of the Carrier Agreement, is not seeking indemnification for its own negligence. As such, Golf's Motion for Judgment on the Pleadings should be denied.

## IV. <u>CONCLUSION</u>

Based on the above, defendant Golf Transportation Inc.'s Motion for Judgment on the Pleadings should be denied with prejudice.

                        RAWLE & HENDERSON LLP

BY: _____
     Gary N. Stewart, Esquire
     Identification No. 67353

BY: _____
     Diane B. Carvell, Esquire
     Identification No. 77983
     Attorneys for Defendant,
     Coyote Logistics, LLC

Date: October 12, 2023

Payne Shoemaker Building, 9th Flr.
240 North Third Street
Harrisburg, Pennsylvania 17101

17323095-1

| | | |
|---|---|---|
| MICHAEL LEE, as the Administrator of the Estate of RAVEN E. LEE | : : : | CIVIL ACTION NO: 3:21-CV-01948-KM |
| Plaintiff, | : : | |
| vs. | : : | |
| | : : | JURY TRIAL DEMANDED |
| GOLF TRANSPORTATION, INC., OCONNOR TRUCKING, INC., JP LOGISTICS, INC., and COYOTE LOGISTICS, LLC | : : : : : | |
| Defendants. | : | |

| | | |
|---|---|---|
| ANDERSON BASTONE, as the Administrator of the Estate of CHAZ BASTONE, | : : : : | CIVIL ACTION NO: 3:21-CV-01948-KM |
| Plaintiff, | : : | |
| vs. | : : | |
| | : : | JURY TRIAL DEMANDED |
| GOLF TRANSPORTATION, INC., OCONNOR TRUCKING, INC., JP LOGISTICS, INC. and, COYOTE LOGISTICS, LLC | : : : : : | |
| Defendants. | : | |

## **CERTIFICATION PURSUANT TO LOCAL RULE 7.8(b)**

I, Diane B. Carvell, a partner at Rawle & Henderson LLP, hereby certifies pursuant to Local Rule 7.8(b)(3) that this Opposition to Defendant Golf's Motion

for Judgment on the Pleadings does not exceed 15 pages or 5,000 words.

                         BY: _____
                              Gary N. Stewart, Esquire
                              Identification No. 67353
                              Diane B. Carvell, Esquire
                              Identification No. 77983
                              *Attorneys for Defendant,*
                              *Coyote Logistics, LLC*
                              Payne Shoemaker Building, 9th Flr.
                              240 North Third Street
Date: October 12, 2023          Harrisburg, Pennsylvania 17101

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within-captioned document was filed electronically with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case and was served by U.S. Mail, postage prepaid, upon unrepresented parties, addressed as follows:

Michael J. O'Neill, Esquire
1002 Garrett Mill Road
Newtown Square, PA 19073
mjo@theoneillfirm.com
*Attorneys for Plaintiff, Michael Lee a/a/o the Estate of Raven E. Lee
and Plaintiff, Anderson Bastone a/a/o the Estate of Chaz Bastone*

Marc S. Rosenberg, Esquire
Rosenberg Law
33 Rock Hill Road, Suite 150
Bala Cynwyd, PA 19004
Rosenberg@plaintiff.com
*Attorneys for Plaintiff, Michael Lee, a/a/o the Estate of Raven E. Lee*

Anthony J. Piazza, Jr., Esquire
Christopher A. Piazza, Esquire
Piazza Law Group
801 Boulevard Avenue
Dickson City, PA 18519
anthony@piazzalawgroup.com; chris@piazzalawgroup.com,
*Attorneys for Plaintiff, Anderson Bastone a/a/o the Estate of Chaz Bastone*

Joseph R. Fowler, Esquire / Samuel Garson, Esquire
Fowler Hirtzel McNulty & Spaulding, LLP
Three Logan Square, Suite 1310
1717 Arch Street
Philadelphia, PA 19103

jfowler@fhmslaw.com; sgarson@fhmslaw.com
*Attorneys for Defendants Golf Transportation, Inc. and JP Logistics, Inc.*

Wade Manley, Esquire
Johnson, Duffie, Stewart & Weidner
301 Market Street
PO Box 109
Lemoyne, PA 17403
wmanley@johnsonduffie.com
*Attorneys for Defendant OConnor Trucking, Inc.*

RAWLE & HENDERSON LLP

BY: _____
      Gary N. Stewart, Esquire
      Diane B. Carvell, Esquire

Dated: October 12, 2023